## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMIE MILLWARD**<br>604 Tree Duck Court<br>Greensburg, PA 15601<br><br>*Plaintiff,*<br><br>vs.<br><br>**LINCOLN PARK PERFORMING ARTS CHARTER SCHOOL**<br>1 Lincoln Park Midland, PA 15059<br><br>And<br><br>**THOMASINA DURKAY**<br><br>And<br><br>**CHRIS SHOVLIN**<br><br>And<br><br>**JOSIE BOOTH**<br><br>And<br><br>**CRAIG LEE**<br><br>And<br><br>**TODD GOODMAN**<br><br>*Defendants.* | NO. __2:23-cv-265__<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby files the following Complaint against Defendants:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for wage violations pursuant to the Fair Labor Standards Act ("FLSA"), the Pennsylvania Wage Collection and Payment Law ("WPCL"), breach of contract, and wrongful discharge in violation of public policy.

### I. PARTIES

2. All allegations in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.
3. Plaintiff Amie Millward ("Plaintiff") is an adult residing at the above address.
4. Plaintiff was employed by Defendant Lincoln Park Performing Arts Center (LPPCPA or 'Lincoln Park').
5. Defendant Lincoln Park Performing Arts Center is a public charity located in Midland, PA, at the above address dedicated to the performing arts.
6. All listed individual Defendants are employees of Lincoln Park and can be served at 1 Lincoln Park Midland, PA 15059, the same address as LPPCPA.
7. Defendant Thomasina Durkay (Durkay) is the art reach coordinator and resident artist for the Defendant Lincoln Park Performing Arts Center.
8. Durkay works at the above address and was Plaintiff's supervisor.
9. Durkay denied Plaintiff her expenses, wages, and overtime compensation.
10. Defendant Chris Shovlin (Shovlin) is the Chief Executive Officer of Lincoln Park Performing Arts Center and works at the above address.

11. Shovlin was a decision-maker in denying Plaintiff her expenses, wages, and compensation for overtime and retaliating against her, as stated in more detail below.

12. Josie Booth (Booth) is the HR Director for the Lincoln Park Performing Arts Center and works at the above address.

13. Based on information and belief, Booth was a decision-maker in denying Plaintiff her expenses, wages and compensation for overtime and retaliating against her, as stated in more detail below.

14. Craig Lee (Lee) is a Lincoln Park Performing Arts Center Director who works at the above address.

15. On information and belief, Lee was a decision-maker in denying Plaintiff her expenses, wages, and compensation for overtime and retaliating against her, as stated in more detail below.

16. Defendant Todd Goodman ('Goodman') is the Chief Academic Officer of Defendant Lincoln Park and the supervisor of Defendant Thomasina Burkay.

17. Defendant Goodman knew of, conspired with, and/or instructed Defendant Burkay not to pay the Plaintiff for her work, not to pay her overtime, to retaliate against her for her complaints regarding illegal activity, and was instrumental in the decision to terminate her employment.

18. Upon information and belief, all Defendants knew of, permitted, and were involved in the practices and policies complained of herein.

## II.   NATURE OF THE ACTION

19. Plaintiff Amie Millward brings this action against her former employer, the Lincoln Park Performing Arts Center, for violations of the Fair Labor Standards Act of 1938 FLSA

("FLSA") and pursuant to the anti-retaliation provisions of her own 29 U.S.C. § 215(a)(3). Plaintiff's employer, through their employees, terminated her employment after she protested and complained to her employer that she had not been paid her wages for overtime or for the hours she had expended on its behalf and after she had refused to participate in the fraudulent activity of teaching 'phantom students' who were neither present nor enrolled in Plaintiff's program. Plaintiff protested that those 'phantom students' had been 'enrolled' to boost Lincoln Park's reimbursement income from the Commonwealth. Plaintiff alleges wrongful discharge in violation of public policy for refusal to participate in an illegal activity. Plaintiff also brings state law claims against all parties in their individual capacity for violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 Pa. C.S.A. § 260.1 *et seq.* and for Breach of Contract.

## II. JURISDICTION and VENUE

20. All allegations in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

21. The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants, such as to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

22. The United States District Court for the Western District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress under the Fair Labor Standards Act.

23. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

24. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants are located in and conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Western District of Pennsylvania at the time of the illegal actions set forth herein).

### III.  FACTS

20. All allegations in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

21. Plaintiff was hired in 2022, pursuant to a written contract, by the Defendant Lincoln Park as a teacher and performing arts director.

22. Defendant listed her as a "Communications Teacher" for Lincoln Park Performing Arts Center under the Department of Education.

23. Later Plaintiff was informed that she was not a teacher but a "teaching artist."

24. These are not interchangeable titles.

25. Plaintiff has and was issued a teaching certificate.

26. Plaintiff's compensation, as memorialized in the written contract, was $25.00 an hour for 36 hours a week (with additional time allotted for lesson planning and preparation).

27. All Defendants tasked Plaintiff with producing a play from scratch for presentation at the end of the calendar year.

28. All Defendants were involved in tasking Plaintiff to put together the new performing arts program.

29. All Defendants were involved in tasking Plaintiff with the responsibility for writing, planning, and providing materials to the other art teacher.

30. All Defendants were involved in tasking and requesting that these extra tasks be undertaken by the Plaintiff.

31. All Defendants had full knowledge and expectation that in order to undertake these extra tasks, Plaintiff would probably have to work over 40 hours a week from July to December 2022.

32. All Defendants knew that Plaintiff's work included but was not limited to writing a play, choreographing it, buying materials for the set, building the set, and directing the play.

33. All Defendants knew that Plaintiff was given no assistance in any of these tasks.

34. All Defendants knew that because the play was to be performed on a day certain, Plaintiff was under an intense time constraint.

35. All Defendants understood that Plaintiff often worked 70 hours a week for several weeks before the performance of the play.

36. All Defendants knew that Plaintiff had been promised reimbursement for her reasonable and necessary expenses pursuant to the performance of the play.

37. Despite Plaintiff producing to Defendant detailed receipts and a spreadsheet of the money she spent, Defendants have refused to reimburse her.

38. All Defendants knew and approved of Plaintiff's selection of Beauty and the Beast as the play to be performed by the students.

39. All Defendants knew, agreed, and insisted that Plaintiff construct the display from the ground up, providing all necessary materials and labor for a lavish production.

40. All Defendants required the Plaintiff to take her duties extremely seriously, with the understanding that the production of Beauty and the Beast would be part of an extravagant 'open house.'

41. Weeks before the presentation, Plaintiff was requested by the site Director Laurie Richards of PACyber, and her manager Thomasina Durkey to complete her production.

42. Plaintiff was put under this pressure several times by email.

43. When Plaintiff finally delivered the project to the school on the day of the open house, she was surprised that it did not look like an open house but more like a multimillion-dollar carnival.

44. There was fine dining, face painting, backpacks, and more than 500 families attended.

45. Plaintiff never saw any of these "teachers" or programs again.

46. Plaintiff was stationed in the theater and required to present the program to each family who visited.

47. Plaintiff was effectively "selling this program" to each family and encouraging them to enroll.

48. Plaintiff was led to believe that LPPCPA was an evolutionary advancement of education and technology.

49. Without Plaintiff, theatre arts might not have been well represented in the school districts which service the underprivileged.

50. In fact, 'theatre' could have been entirely removed from their education.

51. Plaintiff was committed to ensuring every family who walked through the display knew the importance of theatre arts in education.

52. Plaintiff was informed thereafter that her display was a hit and that the numbers of students and families wishing to enroll were the highest numbers the school had ever seen.

53. Plaintiff found it strange that she needed to take attendance twice and report it twice.

54. When Plaintiff questioned this, she was informed that PaCyber was two separate organizations.

55. Plaintiff never found any evidence indicating this was true.

56. Plaintiff's questioning about this issue was brushed off.

57. Plaintiff only saw the children she had enrolled, most of whom had I.E.P.'s but was given no guidance on how these students' needs should be addressed.

58. Plaintiff became aware of unusual and confusing inventory and materials lists.

59. Plaintiff's timecard entries were also difficult, not because she did fail to understand the technology but because her timecard was always modified without her permission or consent.

60. Plaintiff was also to sign and submit inventory reports for material she could not account for and therefore refused to sign these.

61. Plaintiff resolved to ask direct questions about her concerns.

62. She communicated and protested several issues, including but not limited to her crushing work schedule and lack of concomitant compensation.

63. On or around November 30, 2022, Plaintiff contacted Defendant Booth, head of H.R., and expressed significant concern that her roster included the names of students who were not attendees at the school.

64. Plaintiff accused Defendant LPPCPA of receiving Commonwealth contributions for each phantom student and informed Booth that she refused to participate in this unlawful conspiracy.

65. At the same time, she complained to Booth that she was not being paid for the hours she had expended.

66. At that meeting, Booth told Plaintiff she was professional and not in trouble.

67. Booth told Plaintiff that she liked Plaintiff's passion and work ethic.

68. Plaintiff had no prior incidents or disciplinary actions, or warnings.

69. Plaintiff had received rave reviews from management, staff, teachers, parents, and students.

70. It was Defendant Lee who informed Plaintiff that she would not be paid for the hours she had reported.

71. Plaintiff asked how that could be, and Lee responded that he was not there to argue.

72. Durkay, with full knowledge and consent of her supervisor, defendant Goodman, had told Plaintiff to expense the materials for the set because they were used by the students, enjoyed by the school, and necessary for the projects assigned.

73. Durkay, with full knowledge and consent of the other Defendants, refused to reimburse the Plaintiff for her expenses, wages, and overtime she is owed.

74. Students informed Plaintiff, parents, Pacyber, and her supervisor that they loved the program Plaintiff had put together.

75. Plaintiff and her students were told that the production could be part of the ArtReach showcase.

76. Defendants terminated Plaintiff less than a week after she complained about participating in the fraudulent activity of checking off phantom students so LPPCPA could receive reimbursement for students who were not enrolled.

77. Defendants terminated Plaintiff less than a week after she requested payment for her wages, including overtime.

78. Defendants terminated Plaintiff after she had submitted receipts and a list of her expenses which Defendants promised to pay.

79. Defendants never told Plaintiff why she was terminated

## COUNT I.
## Plaintiff vs. All Defendants

### Retaliation for Complaining of Wage Violations
### Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 et seq.

80. All allegations in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

81. Plaintiff, as stated hereinabove, protested to Booth that she was not paid overtime.

82. Plaintiff suffered the retaliation of termination days after her complaint.

83. All Defendants were involved in the decision to terminate her.

84. Plaintiff has suffered and will continue to suffer damages due to her termination.

## COUNT II.
## Plaintiff vs. All Defendants

### Pennsylvania Wage Payment and Collection Law (WPCL)
### 43 Pa.Cons.Stat.Ann.§§ 260.1-260.12.

85. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

86. As stated hereinabove, Plaintiff is owed the wages she has not been paid.

87. Plaintiff was an employee, as that term is defined by the WPCL.

88. Under the WPCL, the term "employer" includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of the above-mentioned classes employing any person in this Commonwealth."

89. Including "agent or officer" in the definition means that the decision-makers within the company who decided not to pay wages due may be held personally liable.

90. As stated, all Defendants made the individual and collective determination not to pay Plaintiff's wages and are all, therefore, personally liable.

91. Plaintiff is also owed overtime, which is also considered wages under the WPCL.

92. As a consequence of the breaches by Defendants of the WPCL, Plaintiff has suffered damages as set forth in the ad damnum clause below.

## COUNT III
## Plaintiff vs. All Defendants

### Wrongful Discharge
### (Violation Of Public Policy)

93. The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

94. If the discharge of an employee threatens public policy, the employee may maintain a cause of action against the employer for wrongful discharge.

95. Pennsylvania courts have recognized the existence of a public policy violation in those instances in which the employee is terminated after he: (1) participates in conduct required by law; (2) refuses to perform an act prohibited by law; or (3) engages in conduct which he is privileged by law to do.

96. Defendants fired Plaintiff for refusing to engage in and for objecting to its policy of unlawfully recording phantom students in its roster, thereby receiving money from the Commonwealth it was not entitled to receive and for refusing to sign off on material expenses, which would be reimbursed by the Commonwealth but for which there was no written record or basis.

97. Plaintiff was terminated less than a week after she made these complaints.

98. Wherefore, Plaintiff requests the relief set forth in the ad damnum clause below.

## COUNT IV
## Plaintiff vs. All Defendants

## Failure to Pay Minimum Wage
## FLSA

99. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

100. Defendants intentionally refused to pay Plaintiff's minimum wage in violation of the FLSA.

101. Plaintiff has suffered damages as a result of the Defendants' conduct.

## COUNT V
## Plaintiff vs. All Defendants

## Failure to Keep Proper Wage and Hour Records
## FLSA

102. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

103. Defendants failed to keep proper wage and hour records in violation of the FLSA.

104. Plaintiff has suffered damages as a result of Defendants' conduct.

## COUNT V
## Plaintiff vs. All Defendants

### Breach of Contract

105. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

106. Defendants promised and agreed to reimburse the Plaintiff for her reasonable and appropriate expenses in building the set for beauty and the beast.

107. Defendants refused to compensate these expenses after Plaintiff relied upon their promise to do so and used her own money in the expectation that she would be reimbursed.

108. The Plaintiff has suffered damages due to Defendants' breach of contract and requests the damages as set forth in the ad damnum clause below.

### PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that the Court enter judgment in his favor and against each Defendants and that it enters an Order as follows:

   a. Defendants are to be permanently enjoined from engaging in violations of th FLSA and WPCL.

   b. To the extent available as a remedy as a matter of law, each Defendant is to compensate the Plaintiff, reimburse the Plaintiff, and make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld

from the date the Plaintiff first suffered retaliation at the hands of the Defendants or its agents until the date of the verdict;

c. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by each Defendants' actions to the extent they are available as a matter of law;

d. The Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish each Defendant for its willful, deliberate, malicious and outrageous conduct and to deter each Defendant or other employers from engaging in such misconduct in the future;

e. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

f. The Plaintiff is to be awarded the costs and expenses of this action and attorneys fees as provided by applicable federal and state law;

g. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal and/or state law and to reflect the tax consequences thereof;

h. The Plaintiff is to be granted such additional relief as may be requested during the pendency of this action in an effort to ensure each Defendant does not engage – or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses to this action;

i. The Court is to maintain jurisdiction of this action after the verdict to ensure compliance with its Orders.

15

j. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

KOLMAN LAW, P.C.

/s/ *Timothy M. Kolman*

Timothy M. Kolman, Esq
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
tkolman@kolmanlaw.com
